Filed 11/19/13  In re X.M. CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re X.M., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E057554 |
| Plaintiff and Respondent, | (Super.Ct.No. J246189) |
| v. | OPINION |
| P.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Gregory S. Tavill, Judge.  Affirmed.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, Jeffrey L. Bryson, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

1

At a jurisdiction hearing, the juvenile court declared X.M. a dependent of the court and removed X.M. from the physical custody of his guardian, defendant and respondent P.M. (Guardian). Guardian contends substantial evidence does not support the findings that (1) she has an unresolved mental illness that placed X.M. at a risk of suffering harm; (2) X.M. was harmed or at risk of harm due to excuses Guardian made for X.M.'s sexually abusive behavior; and (3) X.M. needed to be removed from her home. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

X.M. is male and was born in 1999. X.M.'s Mother suffered from substance abuse and mental health issues. X.M.'s alleged father was serving a life term in prison. Guardian was a family friend. X.M. had lived with Guardian since he was 14 months old. Guardian was granted guardianship of X.M. by the superior court in May 2001. Guardian has two grandchildren, I.D. and N.D. I.D. is female and was born in 2008. N.D. is male and was born in 2010.

On August 8, 2012, Guardian left X.M. at home with I.D. and N.D. while she ran an errand. X.M. called Guardian and told her he saw I.D. place her mouth on N.D.'s genitals. Guardian told X.M. to separate the children, and she returned home along with her friend, Rhonda. Guardian questioned I.D., who said she asked X.M. for juice and he responded, "'[L]et me put my thing in your mouth.'" I.D. denied touching N.D. In other words, I.D. accused X.M. of being the perpetrator. Guardian became upset and began hitting X.M. Guardian stated that she "beat[] the hell" out of X.M. Eventually Rhonda stopped Guardian. Rhonda stayed in a bathroom with X.M. Guardian was

afraid she could not stop hitting X.M., so she called 911 and reported the incident. Guardian then suffered an anxiety attack. Guardian has been diagnosed with bipolar disorder and was receiving psychiatric treatment at the time of this incident.

X.M. was taken to juvenile detention. The Child and Adult Abuse Hotline Unit received a report that X.M. placed his penis in I.D.'s mouth and anus and that X.M. was in juvenile detention. Plaintiff and respondent San Bernardino County Children and Family Services (the Department) tried to locate the family. The Department found Guardian was in jail following an arrest for identity theft (Pen. Code, § 530.5, subd. (a)), burglary (Pen. Code, § 459), check forgery (Pen. Code, § 470, subd. (d)), and forging an official seal (Pen. Code, § 472).

A Department social worker interviewed guardian. Guardian said the allegations received on the hotline were true, but explained that I.D. "enticed" X.M. "with her body." Guardian asserted X.M. was "innocent" and refused to believe X.M. intentionally abused I.D. Guardian explained she was arrested when she tried to cash a check that did not belong to her. Guardian wanted the money so she could purchase a gun to carry with her. Guardian said I.D.'s father wanted to hurt X.M., due to X.M. abusing I.D., so Guardian needed the gun to protect herself and X.M.

Two Department social workers interviewed X.M. at the juvenile detention center. Initially, X.M. denied all the allegations, and said N.D. placed his penis in I.D.'s mouth. Eventually, X.M. admitted he placed his penis in I.D.'s mouth; however, he denied placing his penis in her vagina or anus. X.M. also denied ejaculating in I.D.'s mouth. When asked what inspired the abuse, X.M. said he watched pornography with

3

his uncle nine months prior. X.M. told Guardian about watching pornography with his uncle; Guardian told him "'not to do it anymore.'"

On September 27, 2012, a hearing was held to determine if X.M. would be a dependent under the jurisdiction of the dependency or delinquency courts. It was decided that X.M.'s case would fall under the jurisdiction of both the dependency and delinquency courts, with the dependency court taking the lead. X.M. was placed in a group home on September 27.

On October 1, the Department filed a dependency petition on behalf of X.M. The Department alleged X.M. suffered or was at a substantial risk of suffering serious physical harm or illness due to (1) Guardian's failure or inability to adequately supervise the child; and (2) Guardian's inability to provide regular care for X.M. because of her mental illness or substance abuse issues. The Department asserted the allegations were supported by the following evidence: (1) Guardian failed to provide a safe environment for X.M.; (2) Guardian's criminal activity impacted her ability to care for X.M.; (3) Guardian had unresolved mental health issues that impacted her ability to care for X.M.; (4) Guardian failed to take appropriate action when she learned X.M. had been exposed to pornography by an adult; and (5) Guardian "makes excuses" for X.M.'s sexually abusive behavior and placed the blame on the four-year-old victim.

At the detention hearing, the juvenile court found a prima facie case was established, and that out-of-home detention was appropriate. At the jurisdiction hearing for N.D., Guardian testified she takes three medications for her bipolar disorder, and the medications control the disorder; however, she does not consistently take the

4

medications.  Guardian also uses medical marijuana three times per day.[1]  At the jurisdiction hearing for X.M., in regard to the mental disorder allegation, Guardian's attorney said to the juvenile court, "[S]he has mental issues.  She thinks they're resolved, but she does have mental issues."

The juvenile court found the following allegations to be true:  (1) Guardian has unresolved mental health issues that impact her ability to properly care for X.M. and which place X.M. at a substantial risk of being harmed or neglected; and (2) Guardian failed to protect X.M. because Guardian made excuses for X.M.'s sexually abusive behavior and shifted the blame to the victim.

The court declared X.M. a dependent of the court.  The court found clear and convincing evidence reflected X.M. should be removed from Guardian's home.  The court stated that X.M.'s placement in a group home was necessary and appropriate.  The court granted Guardian supervised visits with X.M. for one hour per week.

Guardian's attorney informed the juvenile court that X.M. wanted to be returned to Guardian's home.  The attorney asked the court to return X.M. to Guardian's physical

---

[1]  At X.M.'s jurisdiction hearing, references were made to Guardian's prior testimony at N.D.'s jurisdiction hearing.  The physical reporter's transcript of N.D.'s jurisdiction hearing is bound with the reporter's transcript from X.M.'s detention hearing.  On appeal, both parties discuss Guardian's testimony at N.D.'s jurisdiction hearing.  Although there we have not found a stipulation or judicial notice ruling reflecting the reporter's transcript of N.D.'s jurisdiction hearing is explicitly part of the record in X.M.'s case, it appears the parties and juvenile court have implicitly made it part of the record.  Accordingly, we treat the reporter's transcript of N.D.'s jurisdiction hearing as part of the record in this appeal.

custody. The court responded, "The social worker always has authorization to return by packet." The court ordered drug testing as part of Guardian's case plan.

## DISCUSSION

### A.   MENTAL HEALTH FINDING

Guardian contends substantial evidence does not support the finding she has unresolved mental health issues that negatively impact her ability to parent X.M.[2]

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.]"'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

A child comes within the jurisdiction of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his . . . guardian to adequately supervise or protect the child, . . . or by the inability of the . . . guardian to provide regular care for

_____

[2] The Department asserts Guardian forfeited a portion of this issue for appeal. Specifically, the Department asserts Guardian conceded at the hearing that she has a mental illness, so she cannot argue on appeal that substantial evidence does not support this finding. We choose to address the entire contention on its merits.

the child due to the . . . guardian's mental illness, developmental disability, or substance abuse." (Welf. & Inst. Code, § 300, subd. (b).)

The petition set forth the following allegation: Guardian "has unresolved mental health issues which severely impact her ability to provide for the wellbeing of the minor, [X.M.]; which places [X.M.] at a significant and substantial risk of harm and or neglect." This allegation appears to relate more to the first part of the statute—failure to adequately supervise or protect—since the allegation does not provide details about a lack of "regular care."

Guardian testified that she has been diagnosed with "Bipolar I," which is a "mental health issue[]." Guardian's testimony is direct evidence that she suffers from a mental illness. Thus, there is substantial evidence supporting a finding that Guardian suffers from a mental illness.

Guardian stated she is under the care of a psychiatrist and is prescribed three different drugs for her disorder. Guardian sometimes fails to take her pills due to "issues with the mental health department" and lack of insurance. Guardian consumes medical marijuana "[e]very day," approximately "three times" per day, in order to "slow[ her] brain down sometimes." Guardian explained that "sometimes [her] thinking starts thinking too fast, and it's overwhelming."

When Guardian arrived home after the sexual abuse incident and learned about X.M.'s actions, she "beat[] the hell out of him." Guardian "was afraid she would not stop." Guardian's friend eventually stopped Guardian and the friend stayed in the bathroom with X.M. while Guardian suffered a panic attack.

The evidence reflects Guardian does not consistently take her prescribed medications and therefore medicates with marijuana to slow down her overwhelming thoughts. Guardian is unable to control her actions, as reflected by her fear of being unable to cease hitting X.M., and needing to be stopped by her friend. Also, Guardian is still suffering from episodes of mental problems as evidence by the panic attack she suffered following the beating. We conclude the juvenile court's finding that Guardian's bipolar illness is still unresolved is supported by the foregoing evidence, because the evidence shows a lack of consistent medication, overwhelming thoughts, a lack of control over her actions, and ongoing panic episodes.

Next, we address whether substantial evidence supports finding that Guardian's unresolved mental illness caused her to harm X.M. or placed him at risk of suffering harm. (See *In re B.T.* (2011) 193 Cal.App.4th 685, 692 [the elements of jurisdiction under Welfare and Institutions Code section 300, subdivision (b) are (1) neglect by the guardian, (2) causation, and (3) harm or risk of harm to the child].)

As set forth *ante*, Guardian testified that she beat "the hell out of" X.M. During this episode, Guardian feared she was unable to stop herself. Guardian explained that her mental illness sometimes causes her to become overwhelmed by her thoughts. Guardian's friend had to stop her from continuing to beat X.M. Guardian suffered a panic attack immediately after beating X.M. Guardian's friend stayed in the bathroom with X.M. while Guardian suffered the panic attack. Guardian testified that during the beating she "almost really hurt [X.M.]"

8

It can be inferred from the foregoing evidence that Guardian suffers episodes in which she is unable to control her thoughts and actions. The evidence reflects Guardian will beat X.M. and not have control over herself—needing to be stopped by another person. Given that X.M. needed another person to protect him from Guardian and Guardian's admission that she "almost really hurt [X.M.]," we conclude substantial evidence supports a finding that X.M. is at a risk of suffering serious harm caused by Guardian's behavior, stemming from her mental illness.

B.    EXCUSES

Guardian contends substantial evidence does not support the finding that she failed to protect X.M. and placed him at risk of harm by making excuses for his sexually abusive behavior.[3]

The substantial evidence standard of review and relevant statutory language is set forth *ante*, so we do not repeat them here. The allegation in the petition is as follows: Guardian "failed to protect [X.M.], in that she makes excuses for his sexually acting out behaviors and shifts the blame to the four year old cousin, [I.D.]; which places [X.M.] at a significant and substantial risk of harm and or neglect."

In regard to the sexual abuse, Guardian told a Department social worker, "'My granddaughter done screwed up. She never should have done that to [X.M.], she

---

[3] The Department asserts we do not need to address this issue because a single true finding is sufficient to support the court's jurisdiction over X.M. We elect to address the contention because we presume the case is still ongoing in the juvenile court, and therefore believe it best to address all the issues raised by Guardian at this stage in the proceedings.

enticed him with her body.'  [Guardian] continued, 'What he did was not a crime, he did nothing wrong and we're fighting this.'"  It can be inferred from Guardian's denials about X.M.'s behavior that she does not believe X.M. requires help or counseling to address his inappropriate actions.  As a result, X.M.'s sexually abusive actions could continue unabated, thus causing X.M. to act out further or be subject to delinquency petitions.  In other words, it can be inferred from Guardian's excuses that she will cause X.M. not to receive the care he needs to treat any inclination he has to be a sexual offender, thus causing X.M. to suffer harm.  Accordingly, we conclude substantial evidence supports the juvenile court's finding.

Guardian asserts substantial evidence does not support the juvenile court's finding because (1) she reported the incident to police, (2) she beat X.M. in response to his sexually abusive acts, and (3) at a meeting with the Department, Guardian expressed hope X.M. could "receive the treatment that he needs in an appropriate therapeutic setting for this to never occur again."

We agree there is evidence reflecting Guardian's excuses will not result in X.M. being at risk of suffering harm.  However, this court cannot reweigh the evidence.  We """"merely determine if there are sufficient facts to support the findings of the [juvenile] court.""""  (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.)  Guardian has aptly raised evidence that contradicts the juvenile court's finding, but contradictory evidence is not sufficient to support reversal under the substantial evidence standard.  Since there is evidence supporting the juvenile court's finding, we find Guardian's argument to be unpersuasive.

C.    REMOVAL

Guardian contends substantial evidence does not support the finding that X.M. needed to be removed from her home.**4**

"At a dispositional hearing, the court's findings must be made on clear and convincing evidence.  The court must find that the welfare of the child requires that [he] be removed from [the guardian's] custody because of a substantial danger, or risk of danger, to [his] physical health if [he] is returned home and that there are no reasonable means to protect [him] without removing [him].  [Citation.]  On review, we employ the substantial evidence test, however bearing in mind the heightened burden of proof.  [Citations.]"  (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.)

As set forth *ante*, it can be inferred from the evidence that Guardian suffers episodes in which she is unable to control her thoughts and actions.  The evidence reflects Guardian has beat X.M. and not had control over herself—needing to be stopped by another person.  Given this evidence, especially Guardian's admission that she "almost really hurt [X.M.]," there is substantial support for the finding that X.M.'s welfare required he be removed from Guardian's custody due to a substantial danger to his physical health.

_____

**4** The Department asserts Guardian forfeited this contention for appeal by submitting on the issue of removal, without argument, in the juvenile court.  After the juvenile court ordered X.M. be removed from Guardian's home, Guardian's attorney said, "I would ask that—I think the child—my understanding in reading the file—would like to return to the guardian."  Given Guardian's attorney's comments on the removal issue, it appears the matter may not have been forfeited.  Regardless, we choose to address the issue on its merits, because it is easily resolved.

11

Since Guardian's beating of X.M. had to be stopped by another person it can be inferred the only way to ensure X.M.'s safety is to have his time with Guardian supervised. It is unreasonable to expect X.M. and Guardian to always be supervised in their home. As a result, there is substantial evidence supporting the finding that there was no reasonable means of protecting X.M. short of removal, because Guardian cannot always be supervised with X.M. if he were returned to her home. Thus, we conclude substantial evidence supports the juvenile court's finding that removal was necessary.

Guardian asserts (1) the sexual abuse on X.M.'s part and the physical violence on Guardian's part were "a one-time occur[re]nce," (2) Guardian responded appropriately by calling the police, and (3) Guardian expressed hope X.M. would receive therapy, so therefore, "[i]t was safe to left X.M. go home." Guardian again highlights contradictory evidence. Contradictory evidence is not sufficient to overcome the substantial evidence standard because this court does not have the authority to reweigh the evidence. (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.)

Next, Guardian asserts there were reasonable alternatives to removal. Guardian contends the juvenile court could have ordered "stringent conditions of supervision" upon releasing X.M. to Guardian's physical custody. Guardian suggests the court could have ordered unannounced visits and individual counseling. Given the sexually abusive behavior and physical violence that occurred in the home within a single day, the evidence supports a finding that unannounced visits would not be sufficient because there was a risk of too much harm occurring in a short period of time. In other words, Guardian and X.M. would need constant supervision to ensure X.M. was protected—

12

random visits occurring days or weeks apart would not be adequate given the abuse and violence that happened so quickly in the home.  In sum, we find Guardian's argument to be unpersuasive.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


MILLER _____
                                                        J.


We concur:


HOLLENHORST _____
                    Acting P. J.


KING _____
                                        J.


13